IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re ALABAMA PROTEIN RECYCLING, LLC, | ) ) ) ) ) ) | BK CASE NO. 02-03083-WRS |
| Debtor. | | |

_____

| | | |
|---|---|---|
| WILLIAM B. BLOUNT, *et al.,* | ) ) ) ) ) ) ) ) ) ) | CASE NO. 2:04-cv-571-MEF |
| Appellants, | | |
| v. | | |
| TOM MCGREGOR, Trustee, | | |
| Appellee. | | |

**MEMORANDUM OPINION AND ORDER**

Appellants William B. Blount ("Blount") and BP Holdings, LLC ("BP") (collectively "Appellants") appeal the Bankruptcy Court's judgment in favor of the Trustee in adversary proceeding 02-03083 in the involuntary Chapter 7 bankruptcy of Alabama Protein Recycling, LLC ("APR"). For the reasons set forth below, this Court finds that the Bankruptcy Court's findings of fact were not clearly erroneous and its judgment is therefore AFFIRMED.

**STANDARD OF REVIEW**

A district court reviews a bankruptcy court's factual findings under the clearly erroneous standard. *In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left

with the definite and firm conviction that a mistake has been committed." *Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997). In performing its review, the district court must give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr. P. 8013.

## FACTS AND PROCEDURAL HISTORY

This appeal arises from an adversary proceeding brought in the involuntary Chapter 7 bankruptcy of APR. On July 8, 2002, the trustee appointed by the Bankruptcy Court, Tom McGregor ("Trustee"), filed suit on behalf of the estate against Blount, BP, and American Proteins, Inc. ("American Proteins").[1] The subject of the litigation was APR's acquisition and subsequent sale of five trucks in conjunction with the Troy Industrial Development Board ("IDB"). The relevant background of these transactions as found by the Bankruptcy Court is as follows.

F. J. Mullis and Appellant BP, a company managed by Appellant Blount, organized APR as an Alabama limited liability company in 1998. Mullis held a sixty percent interest in the company, and BP held the remainder. In order to get APR's business off the ground, the company coordinated with the IDB to arrange a 6.8 million dollar bond issue. IDB then leased all of the project assets to APR and assigned its interest under the lease to Regions Bank ("Regions") as the trustee for the bondholders. This arrangement provided that APR would use the bond proceeds to acquire assets and would make its payments to Regions, who

---

[1] On September 9, 2003, the Bankruptcy Court dismissed American Proteins as a party defendant from the adversary proceeding.

would then compensate the bondholders.

For APR to gain access to the bond funds, it had to submit a requisition form to Regions. On September 25, 1998, APR submitted requisitions for the purchase of four McNealus trucks and an F700 boom truck for use in connection with its poultry processing and recycling operations. Regions approved this request, and bond proceeds were allotted for the acquisition. While IDB was not directly involved in this process, the four McNealus vehicles were titled in the name of "IDB of the City of Troy and the Alabama Protein Recycling Project." The title to the F700 truck was issued solely to APR.

After beginning its operations in 1999, APR experienced great difficulty in making a profit, and Blount and BP explored several options to repair its business functions. Nevertheless, the company was forced to close its manufacturing segment in 2000 and subsequently began considering offers of purchase on certain assets and routes. Around this time, Blount, in cooperation with APR chief executive officer Randal Smith, arranged the sale of the five trucks to American Proteins for $524,000. At trial, Blount testified that he believed that he was acting with the authority of the IDB, that the trucks were owned outright by APR, and that he was unsure whether Regions would have had an interest in the trucks.

On November 20, 2000, APR closed the sale with American Proteins, and Blount deposited the resulting funds in an account of BP. BP then proceeded to issue the following four checks: (1) Check #1077 dated November 20, 2000, payable to Troy Bank and Trust in the amount of $101,082.90; (2) Check #1078 dated November 20, 2000, payable to Regions

3

in the amount of $202,038.83; (3) Check #1079 dated November 21, 2000, payable to FNB in the amount of $62,899.37; and (4) Check #1082 dated November 29, 2000, payable to Colonial Bank in the amount of $152,814.13.  These were the transactions at issue in the Bankruptcy Court and are the subject of the instant appeal.

The Bankruptcy Court held an adversary proceeding on these matters and concluded that Checks #1077 and #1078 did go to the payment of debts owed by APR.  As a result, APR received consideration from BP for the amounts paid for the trucks and a fraudulent conveyance was not found with regard to these two transactions.  However, with regard to Checks #1079 and #1082, the Bankruptcy Court determined that these payments benefitted Blount personally and thus represented a conveyance designed to hinder the efforts of APR's creditors.  Specifically, the court concluded that Check #1079 went to the payment of a promissory note personally executed by Blount for the purchase of freezer boxes.  These boxes were for use in connection with APR's operations, but the loan was taken in Blount's name and there was no indication in the record that the ownership of the boxes was transferred to APR.  Thus, the court determined that this payment did not directly benefit APR.  The court also found that Blount had not supplied any credible explanation or detail about the $5,164.77 difference between the $524,000 received for the trucks and the four checks or about the purpose of Check #1082.  As a result, the court likewise determined these were  fraudulent conveyances.  After making these findings, the Bankruptcy Court entered judgment against BP and Blount in the amount of $220,878.27.

4

## DISCUSSION

In their appeal, the Appellants challenge the factual determinations made by the Bankruptcy Court. Hence, that court's conclusions will only be reversed if found clearly erroneous. The two issues raised by the Appellants are: (1) did the Bankruptcy Court wrongly determine that the trucks were the property of the estate and (2) did the Bankruptcy Court wrongly determine that APR did not receive consideration for Checks #1079 and #1082?

**A. Property of the Estate**

The Bankruptcy Court ruled that the trucks in question were part of APR's estate and thus within the jurisdiction of that court. On appeal, the Appellants argue that the relevant documents and testimony produced at trial establish that the trucks were actually owned by IDB. According to the Appellants, APR held at most a leasehold interest in the trucks that was subsequently abandoned by the Trustee. The Appellants resultantly contend that the Bankruptcy Court lacked jurisdiction over these matters as APR did not hold a cognizable interest in the trucks.

As defined by the Bankruptcy Code, "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court has determined that this phrase "is to be broadly construed so as to effectuate the intent of Congress." *In re Thomas*, 883 F.2d at 995 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983)). This expansive definition

includes property both owned by the debtor and that possessed under unexpired leases at the time the bankruptcy case is initiated. *See Weingarten Nostat, Inc. v. Serv. Merchan. Co., Inc.*, 396 F.3d 737, 742 (6th Cir. 2005).

Here, the testimony and evidence presented at trial showed that without a doubt APR held, at minimum, a leasehold interest in the subject trucks. Additionally, the Trustee provided testimony that established that he had no intention of abandoning his interest in the trucks. Moreover, the conveyance at issue is not the actual sale of the trucks, but the transfer of the proceeds therefrom to BP without consideration. There is no question that these funds would be considered property of the estate. Thus, the Court finds that substantial evidence supports the Bankruptcy Court's judgment that it had proper jurisdiction over these matters. Consequently, the Court cannot say that the Bankruptcy Court's findings were "clearly erroneous" and must AFFIRM its opinion on this point.

**B. Fraudulent Conveyance**

After determining that the trucks were the property of APR's bankruptcy estate, the Bankruptcy Court then found that APR did not receive any benefit or consideration from the $220,878.27 represented by Checks #1079 and #1082.[2] This determination led the court to find that Blount and BP had caused APR to make fraudulent conveyances in these two instances that were recoverable by the Trustee.

The Appellants argue that the Bankruptcy Court incorrectly found that APR did not

---

[2] As noted above, this amount also includes $5,164.77 that was completely unaccounted for by the Appellants.

receive consideration from Check #1079. According to the Appellants, Blount's testimony at trial adequately established that APR was the true beneficiary of the promissory note repaid by Check #1079. However, the evidence adduced at trial clearly demonstrated that this debt was a personal obligation of Blount, and no record was provided to show that APR agreed to assume this debt. Hence, APR's eventual use of the freezer boxes purchased with the proceeds of the note created, at most, a debt by APR to Blount. Blount would properly protect this interest by filing a claim with the bankruptcy estate, but such action would not alter the accuracy of the Bankruptcy Court's factual findings on this issue. With regard to Check #1082, a similar analysis applies because the Appellants used funds that were the property of APR to pay off personal debts. On this matter, the Appellants have offered even less evidence to support their contention that the payment was directed toward a debt of APR. Therefore, this Court must AFFIRM the Bankruptcy Court's ruling on these points as well.

## CONCLUSION

For the reasons discussed above, the Bankruptcy Court's ruling is AFFIRMED.

Done this the 24th day of January, 2006.

                                                    /s/ Mark E. Fuller
                                         CHIEF UNITED STATES DISTRICT JUDGE